Good morning, everyone. We have a very full pocket this morning. As you will notice from the monitor, we have Judge Nelson by video from Boise. As counsel approach to argue, if you're appellant and you want to save some time, if you'll tell me right now what we'll do is we'll take the time off the clock and put it in the bank for you. So would you like to save some time? Yes, Your Honor. I'm Brian Leslie, representing Mr. Peterson, and I'd like to save two minutes, if I may. Put eight minutes on the clock. And when you see the yellow light, that means you're at the end of the fourth quarter. And when you see the red light, that means stop. OK? All right. First case on for argument this morning is United States v. Peterson. Counsel? Yes, Your Honors. As I said, I'm Brian Leslie. Thank you. The panel had asked us to come prepare to address Begay, and I think that's the place I should start. Sure. The Oregon crime of – the Oregon felony crime of eluding a police officer fails under both of the prongs of the Begay test, which is to say the crime as defined by statute is neither similar in kind nor similar in degree of risk with any of the four listed offenses in the statute. That is burglary, arson, extortion, or use of explosives. And I'll talk about that at greater length. What Begay says is that we apply the categorical approach to this question, and we look at the crime as defined in the statute. Now, all of our briefs, with the exception of my reply brief, which was filed on the very day that Begay was decided, predated Begay. So we have to kind of adapt all the arguments we made to Begay. But we talked at great length in the briefs about what the elements of the offense are. And the elements of the offense are that you, while driving a vehicle – because it's the fact that it's a vehicle that makes it a felony. If it was on foot, it would be a misdemeanor. While driving a vehicle, fail to stop for a signal that's given by – a signal to stop that's given by either an officer in uniform or a marked police vehicle using sirens or other means. So fail – and I say failing to stop. The actual terms are, I think, fleeing and failing to stop, or words to that effect. Now – It's not enough to violate the statute to delay the stop once you've been signaled. Well, I think it is. And I think that's actually what the Mather case that was discussed in the briefs involved. In Mather, the person drove, according to the description by the case – given by the case, 20 miles an hour for about 400 feet to their driveway, but had places that they could have pulled off in between and didn't. And the Oregon court said that was sufficient probable cause to warrant the stop under that offense. And so I think the answer to the question is yes, that – that it is enough that you'd simply delay the stop. There is no requirement under the statute that you engage in any form of dangerous driving. That is to say, in the Mather case, there's no implication that there was any form of dangerous driving. In my reply brief, I cited a couple of other cases. There was the Burnett case where the person had a broken taillight, and as the description contained in the case is that after being signaled to stop, he continued on within the speed limit and made some driving maneuvers that – this is as close to a quote – could have been interpreted as evasive. But the court didn't describe what they were, nor did the court claim that they were dangerous, risky-type maneuvers. And so that was enough to sustain that conviction. Then there was – then there was the Matthews case that I described where the person, having been stopped, having actually, you know, encountered the police officer at the stop, done an argument, and wanted to go see if his sick mother was in danger. And so having had this argument with the police officer, got back in the car and drove 12 miles to his mother's house where he was then arrested for eluding a police officer. There's no implication in that case that the driving was dangerous, risky, that it put any danger to others. Now, the Eighth and Seventh Circuit have both looked at this issue. In fact, I think the Eighth Circuit case involves this very statute. Yes. And concluded otherwise. That's correct. What's wrong with them? Well, I talked – I talked a lot in the reply brief about that. Kendrick was decided two days after this Court decided Kelly. Kelly was the case in which this Court held that the Washington eluding statute, which I say is square on all fours with the Oregon statute, Kelly said that the Washington statute did not categorically qualify. Two days later, the Eighth Circuit decides Kendrick saying that the Oregon statute does. I suspect that the Eighth Circuit didn't have advantage of the Ninth Circuit's pronouncement in Kelly. But second, the Eighth Circuit in Kendrick also just took a different mode of approach than this Court did in Kelly. And that is the Eighth Circuit cited a Sixth Circuit case called Martin. The Eighth Circuit took – basically cited a number of other cases that this Court had already distinguished in Kelly. And I talk about this at greater length in the reply brief. The Kendrick case, the Eighth Circuit panel also adopted the Eighth Circuit's Nation holding, which held that all forms of escape, including walk-away escapes from work release, qualify as violent felonies. This Court had already rejected Nation specifically in that position more generally in a case called Piccolo. So the Eighth Circuit in Kendrick just took a very different approach than this Court did, and, as I said, didn't have, I don't think, the advantage of this Court's decision in Kelly. And frankly the Ninth Circuit did. Scalia. Let's assume we agree with you that the categorical approach doesn't work. What about the modified categorical approach? Phillips. Well, I appreciate the question because it also brings me back to Begay. But in Navarro-Lopez and Jennings, you don't get to the modified categorical approach in this case because the statute is simply missing an element that would require that there be a danger, a risk in most others. Even though from the facts of this case we can tell that Mr. Peterson was driving in a way that clearly was dangerous under any definition. Well, I don't agree, Your Honor. Well, I think it's true that it's dangerous under any definition. The PSR says he was driving at 90 miles an hour and he was driving. But let me refer to the plea colloquy that's at page 63 of the present materials. The government also referred to it in the brief. During his guilty plea to, and this is the modified categorical approach, during his guilty plea to the eluding crime, he also pled guilty to several other offenses. And first of all, if that kind of erratic, reckless driving was part of the eluding offenses, they wouldn't have had to charge him with the other. So that's an indication that, once again, that eluding doesn't include that other conduct. But what he admitted, and I'm looking at page 63 of the present materials, was reckless conduct. He admitted first that he was driving under the influence of intoxicants. Okay. Well, that was, as we know in Begay, not violent, purposeful, and aggressive. He also admitted at the same time and place were you driving in a reckless manner that endangered the safety of persons or property. Yes. At the same time and place did you unlawfully and recklessly engage in conduct that created a substantial risk of serious injury to Jeffrey Scott Martina? Yes, I did. And the three highway workers? Yes, I did. So he admitted reckless conduct in the plea colloquy. That did create a danger, though, for a named person. Yes. But if we're talking in terms of the first prong of the Begay test, which is purposeful, violent, and aggressive, he did not admit purposeful, violent, and aggressive conduct in the plea colloquy. He only admitted reckless conduct, which isn't enough under the modified categorical approach to qualify under what Begay requires. You're now well into your rebuttal time. Thank you, Your Honor. So why don't you have a seat and we'll give you half a minute or so. We'll hear from the government at this time.  May it please the Court. Suzanne Bredas for the United States. The purpose of the career offender enhancement is to punish more severely those criminals who create, who repeatedly commit crimes that put other people's safety at risk. Now, the question that's before this Court is whether using a motor vehicle to attempt to elude or to escape a pursuing police officer qualifies as a violent crime under the residual clause. And this Court is correct in directing us to Begay, because after the Supreme Court's decision in Begay, the analysis that's in front of the Ninth Circuit on this issue is completely different. Begay overrules Kelly for a couple of reasons. The holding in Begay is that a crime of violence under the residual clause is now So in other words, where before we had the listed offenses and we had the residual clause, Begay now marries the two and requires us to define the residual clause in relation to the listed offenses. Kelly did not do that. In fact, it went in the opposite direction. What Kelly did was apply a standard to the residual clause, namely that crimes in order to be crimes of violence have to have as an element to them actual risk of harm to another person. Counsel, Judge O'Scanlan in his dissent in Jennings argued that Kelly had been overruled. Did the majority in Jennings address that question? The majority in Jennings did address that question in footnote 9 of the opinion, in which they say that Kelly's reasoning has been significantly undermined by James But it had not been overruled by Duaneis Alvarez. Now, this decision is pre-Jennings, I mean pre-Begay. That's right. That's right. Okay. So you think that Begay finished what Duaneis Alvarez started? That's exactly right, Your Honor. I think Begay took the last leg out from under Kelly. And the reason is when you look at James, which undermined the reasoning in Kelly, specifically Kelly said that you needed to have actual risk of harm as an element of the crime. And what James said was that you need to just have the crime needs to be of a nature that creates significant risk of harm. It does not have to happen in every case. Not every burglary has to have someone at home in order to make it a crime of violence. It is inherent in the nature. And so James used that to undermine the Kelly analysis, the Kelly rule. But what Begay does is take it one step farther than the court in James actually did. And what Begay did is said not only do we need to look at crimes that of their very nature pose a risk of harm, but we actually have to limit the residual clause to crimes that are like the listed offenses. And the test of the... And DUI is not like burglary. That's right. DUI is not like burglary. How is this offense like burglary? It's like burglary for a couple of reasons. What Begay tells us is that the listed offenses are similar in that they are purposeful, violent, and aggressive. DUI does not have a purposefulness requirement. It's a strict liability crime. It does not have the intent requirement. The offense here, the Oregon statute, requires one to knowingly flee or attempt to elude. And under Oregon law, attempt is defined as an intent crime. So it shares the purposefulness requirement of the listed offenses. Secondly... It sure seems to me, counsel, that as I look at the Washington statute and the Oregon statute, that the Washington statute is far more demanding in terms of the potential for harm to persons or property. And, of course, it was the fact that it said, or property, that doomed it in Kelly. If the Washington statute had been limited to wanton or willful disregard for the lives of others, then it looks like Kelly would have come out differently. But I don't see that Oregon has come even close to requiring that. Well, what Oregon requires, Your Honor, is that a police officer actually be in pursuit. And the Washington statute had that as well. And this Court's opinion in Savage tells us that the pursuit of a police officer, even the obligation on the part of a police officer to pursue a fleeing. In that case, it was a felon trying to flee from a secured location. The fact that the guards have an obligation to pursue is what creates the inherent risk that made fleeing from a secured facility a crime of violence. Well, I agree, counsel. There's all kinds of things under the fleeing or attempting to elude police officer than the Oregon statute that clearly would endanger people and come within the gay. But we can't adopt a categorical approach unless we can find that in the vast majority or sort of the heart of that statute, that's what it's about. And you just haven't got the same language in Oregon that we did in Washington. And yet we've now found twice that the Washington statute was not sufficient. Well, Your Honor, I'd ask you to focus on a piece of the statute that's shared actually by the Oregon and the Washington language that the Court in Kelly and in Jennings didn't concentrate on, which is this requirement that a police officer be in pursuit. And when you look at burglary and the Supreme Court's decision in James, what it held was that the reason that burglary is a crime of violence, the reason that it's dangerous and aggressive, is not because of the actual crime, not the breaking and entering and taking something, but the chance, the possibility that there's going to be a confrontation, whether it be with a homeowner, with a police officer, with a mere bystander that passes by. That's the language that was used in James. And the Court held that it's that possibility of confrontation, even though it's not guaranteed in every burglary. In fact, a lot of burglars will wait until the house is empty before they go into it. But the possibility of that confrontation is what makes burglary a violent crime. And Oregon takes that possibility one step further, takes that analysis one step further, by requiring confrontation in order to actually commit the crime. You don't commit the crime of attempting to elude a police officer unless a police officer is actually in pursuit. You've pointed to the pursuing, the requirement of pursuing, which is in 1bA. Well, 1bB also punishes a person who gets out of a vehicle and knowingly flees or attempts to elude the police officer. That pursuing, the language has been dropped. Your Honor, and that section is a misdemeanor crime. It's not a felony under the Oregon statute. It's only when you're in the vehicle and the officer is pursuing that it's a felony. So therefore, that's the only time it could qualify as a crime of violence. I see where that happens. Okay. Counsel, in the minute or two that you've got left, would you turn to the modified question? Let's suppose that we disagree with you on the question of categorical. Yes, Your Honor. Why not modified? And the analysis under the modified categorical is very similar to the analysis under the categorical. As Your Honors know, the modified categorical does little more than offer the court an opportunity when you have an overbroad statute  In theoretical matter, Counsel, in this case, if we were to decide that the Oregon statute does not fit the categorical approach, after our decision in Navarro-Lopez, is there any chance of the government prevailing on a modified inquiry? Yes, Your Honor. What Navarro-Lopez held was that in order to apply the modified categorical, the statute itself has to contain all of the requisite provisions. So here what we would ask is whether the language of the Oregon statute contains as an element the risk of harm that we're looking for here. And back to the analysis that I've already given under the categorical approach, because the Oregon statute requires a police officer to be in pursuit, the risk of harm arises from that element. It's inherent in the statute, just as it was in the Montana escape statute that was looked at in Savage, and just as it is in the burglary statutes that the Supreme Court looked at in James. The risk of confrontation, and here the guarantee of confrontation, puts risk as a required element into the Oregon statute. And so, therefore, under either approach, the statute would qualify as a modified I'm heading back to Mr. Leslie's point that the defendant only pled guilty to reckless conduct and not to purposeful and violent conduct. Well, Your Honor, in pleading guilty to the Oregon statute, the attempt to elude statute, he pled guilty to the purposeful attempt to elude a police officer. So he did plead guilty to the purposefulness conduct there. The other, the reckless endangerment elements of that simply give more flesh to what happened in that pursuit, namely that he did speed through an area where three But the purposefulness requirement is met by the Oregon statute itself. And Mr. Leslie also spends a lot of time trying to discuss other Oregon cases which undermine the analysis. But all of those cases are distinguishable. In Mather, the question there, first of all, the Mather statute did not have the requirement that a police officer be in pursuit. So it's distinguishable on those grounds. Also, what was at issue there was whether there was probable cause to find that the person was guilty under the statute. At trial, the charge was dismissed. So this case really turns on Beard, the district court's analysis in Beard, which supports the proposition that Oregon has consistently applied the statute to violent conduct as it requires. Thank you, Your Honors. All right.  You have about a half a minute for rebuttal, counsel. Your Honor, I appreciate that. I want to make the point. Excuse me. Just a second. The clockkeeper informed me you have a full two minutes for rebuttal. We have the clock wrong. I want to make the point that Begay requires purposeful, violent, and aggressive. And it uses the word and. Now, I realize that Begay is new. We don't have a lot of following authority. And we're, to some extent, writing on a bit of a clean slate and interpreting what that means. But I think what it means is that Begay is trying to say there is a category of offenses in which the defendant intends the risky, dangerous, aggressive outcome. As opposed to, in other words, I think it's saying that. It's just a matter of intent. That's not going to be too difficult to satisfy under the statute because it does require knowingly that you must knowingly flee or attempt to elude a pursuing police officer. If this is a question that the Court is interested in, I actually believe that knowingly under Oregon law is different than intentional. And I think that the difference is that knowingly refers to knowing the manner of the conduct in which you are engaged, whereas intentional is intending that a result occur. And if the Court would like additional authority or briefing on that, I'd be prepared to do that within a matter of a day or so. You're suggesting that knowingly here might mean that you didn't know that an officer was pursuing you? No. I think the requirement is that you do know that an officer is pursuing you. I think the difference between knowingly and intentionally, though, is that intentionally carries with it an intention to produce a result as opposed to knowingly being the state of mind of knowledge of the nature of the activity in which you're engaged. And as I say, I can elaborate on that. I know we didn't talk about that in the briefs, and I don't want to go too far in argument talking about things I haven't talked about before. But if that's a point in which the Court's interested, I can provide that authority and there's even Oregon case law that makes the distinction in the states of mind. If we feel we need help on that, we'll advise the parties. I know I'm out of time, and so I'll conclude. But the point I was making is that it's knowing violent and purpose, or it's purposeful violent and aggressive, and that the word we have is included in that. Okay. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Nelson, Hawkins, Bybee